UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRUCE HINES                                                                CIVIL ACTION

VERSUS                                                                       NO. 18-10234

JASON KENT, WARDEN                                             SECTION: "B"(1)

REPORT AND RECOMMENDATION

Petitioner, Bruce Hines, a Louisiana state prisoner, filed this federal habeas corpus application seeking relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that the application be **DISMISSED WITH PREJUDICE**.

On June 9, 2011, petitioner was convicted of two counts of armed robbery under Louisiana law.[1] On August 18, 2011, he was sentenced on each conviction to a concurrent term of fifty years imprisonment.[2] On June 8, 2012, the Louisiana First Circuit Court of Appeal affirmed his convictions and sentences.[3] Petitioner did not seek review of that judgment by the Louisiana Supreme Court.[4]

On July 2, 2013, petitioner, through counsel, filed an application for post-conviction relief with the state district court.[5] That application was denied on July 8, 2013.[6] On November 4, 2013, the Louisiana First Circuit Court of Appeal then refused to consider petitioner's related writ

---

[1] State Rec., Vol. 7 of 8, trial transcript, p. 719; State Rec., Vol. 1 of 8, minute entry dated June 9, 2011; State Rec., Vol. 2 of 8, jury verdict forms.
[2] State Rec., Vol. 7 of 8, transcript of August 18, 2011; State Rec., Vol. 1 of 8, minute entry dated August 18, 2011.
[3] State v. Hines, No. 2011 KA 2082, 2012 WL 2061513, 2012 La. App. Unpub. LEXIS 447 (La. App. 1st Cir. June 8, 2012); Rec. Doc. 4-1, pp. 38-49.
[4] See Rec. Doc. 4, pp. 2 and 7.
[5] State Rec., Vol. 7 of 8.
[6] State Rec., Vol. 7 of 8, Order and Reasons for Judgment dated July 8, 2013.

application because it did not comply with the court's rules.[7] However, petitioner's counsel then filed a new compliant writ application which was denied on March 14, 2014.[8]

On June 9, 2014, petitioner, through counsel, filed a "Motion to Re-Urge Application for Post-Conviction Relief" with the state district court.[9] On March 16, 2015, the district court denied relief.[10] Petitioner's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on August 10, 2015,[11] and by the Louisiana Supreme Court on October 10, 2016.[12]

On March 8, 2017, petitioner filed another application for post-conviction relief with the state district court.[13] That application was denied on March 17, 2017.[14] His related writ applications were thereafter also denied by the Louisiana First Circuit Court of Appeal on July 10, 2017,[15] and by the Louisiana Supreme Court on September 14, 2018.[16]

---

[7] State v. Hines, No. 2013 KW 1415, 2013 WL 12173056, 2013 La. App. LEXIS 3007 (La. App. 1st Cir. Nov. 4, 2013); Rec. Doc. 4-2, p. 8. While that application was pending, petitioner also filed with the state district court a *pro se* post-conviction application which was denied on September 16, 2013. State Rec., Vol. 1 of 8, Order dated September 16, 2013.

[8] State v. Hines, No. 2013 KW 2078, 2014 La. App. LEXIS 700 (La. App. 1st Cir. Mar. 14, 2014); Rec. Doc. 4-2, p. 21.

[9] State Rec., Vol. 7 of 8.

[10] State Rec., Vol. 7 of 8, Order and Reasons for Judgment dated March 16, 2015.

[11] State v. Hines, No. 2015 KH 0780, 2015 La. App. LEXIS 1509 (La. App. 1st Cir. Aug. 10, 2015); State Rec., Vol. 7 of 8.

[12] State *ex rel.* Hines v. State, 201 So. 3d 898 (La. 2016); State Rec., Vol. 7 of 8.

[13] State Rec., Vol. 7 of 8.

[14] State Rec., Vol. 7 of 8, Order dated March 17, 2017.

[15] State v. Hines, No. 2017 KW 0522, 2017 WL 2953227, 2017 La. App. LEXIS 1271 (La. App. 1st Cir. July 10, 2017); State Rec., Vol. 7 of 8.

[16] State *ex rel.* Hines v. State, 251 So. 3d 1090 (La. 2018); State Rec., Vol. 7 of 8.

On October 22, 2018, petitioner filed the instant federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.[17] The state filed a response arguing that the application is untimely.[18] The state is correct.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner is generally required to bring his § 2254 claims within one (1) year of the date on which his underlying state criminal judgment became "final." 28 U.S.C. § 2244(d)(1)(A).[19] With respect to determining the date of finality, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003). *However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires."* Id. at 694; see also Foreman v. Dretke, 383 F.3d 336, 338 (5th Cir. 2004) (Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).
> *Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review. See Foreman, 383 F.3d at 338-39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. See Causey v. Cain, 450 F.3d 601, 606 (5th Cir. 2006); Roberts, 319 F.3d at 693. Louisiana Supreme Court Rule X, § 5(a) states that an application "to review a judgment of the court of appeal either after an appeal to that court ... or after a denial of an application, shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal."*

---

[17] Rec. Doc. 4. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner has declared under penalty of perjury that his application was placed in the prison mailing system on October 22, 2018. Rec. Doc. 4, p. 5.
[18] Rec. Doc. 15.
[19] Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008) (emphasis added).

As noted, the Louisiana First Circuit Court of Appeal affirmed petitioner's convictions and sentences on direct review on June 8, 2012.[20] Accordingly, his state criminal judgment became final for AEDPA purposes no later than July 9, 2012, when his thirty-day deadline expired for seeking further direct review.[21] His federal limitations period therefore commenced on that date and then expired one year later, unless that federal deadline was extended through tolling.

The Court first considers statutory tolling. The AEDPA provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). Moreover, once a prisoner properly files a post-conviction application, that application remains "pending" for the purposes of § 2244(d)(2) for the duration of the post-conviction proceedings, so long as he continues to seek review at the higher levels of the state court system in a timely manner. Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-71 (5th Cir. 2004). However, if he fails to proceed to a higher level of review in a timely fashion, then his application ceases to be "pending" for the purposes of § 2244(d)(2) when his time for seeking such review expires. Melancon v. Kaylo, 259 F.3d 401, 406 (5th Cir. 2001).

---

[20] State v. Hines, No. 2011 KA 2082, 2012 WL 2061513, 2012 La. App. Unpub. LEXIS 447 (La. App. 1st Cir. June 8, 2012); Rec. Doc. 4-1, pp. 38-49.

[21] Because the thirtieth day here fell on a Sunday, petitioner had until Monday, July 9, 2012, to seek such review. See La. Code Crim. P. art. 13; La. Rev. Stat. Ann. § 1:55.

The Court notes that petitioner attached to his federal application a copy of document captioned for the Louisiana First Circuit Court of Appeal, entitled "Petition for Rehearing or, in the Alternative, an Out of Time Writ Application to the Supreme Court," and bearing the same case number as his direct appeal. Rec. Doc. 4-1, pp. 50-52. However, that document does not bear a filing stamp indicating that it was actually filed in any state court. Moreover, the undersigned's staff has contacted the Clerks of Court for both the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court and has confirmed that the document was not filed with either of those courts.

Here, after three hundred fifty-seven (357) days elapsed, petitioner tolled his federal limitations period by filing a post-conviction application with the state district court on July 2, 2013. After that application was denied, he sought review by the Louisiana First Circuit Court of Appeal. That Court eventually denied relief on March 14, 2014.[22] Out of an abundance of caution, and because it makes no difference here in any event, this Court will assume for the purposes of this decision that the post-conviction application remained pending for AEDPA purposes until April 14, 2014, the date on which petitioner's time expired for seeking further review by the Louisiana Supreme Court.[23]

When the federal limitations period resumed running on that date, petitioner had only eight (8) days of the period remaining. Because he had no other applications pending before the state courts during that eight-day period, he is not entitled to further statutory tolling.[24] Accordingly, his federal limitations expired on **April 22, 2014**, unless he is eligible for equitable tolling.

The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). However, "equitable tolling is unavailable in most cases …." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's

---

[22] State v. Hines, No. 2013 KW 2078, 2014 La. App. LEXIS 700 (La. App. 1st Cir. Mar. 14, 2014); Rec. Doc. 4-2, p. 21.

[23] As previously noted, a petitioner has thirty days to seek review by the Louisiana Supreme Court. See Louisiana Supreme Court Rule X, § 5(a). However, because the thirtieth day of the period fell on a Sunday in this instance, petitioner had until Monday, April 14, 2014, to file a Louisiana Supreme Court writ application. See La. Code Crim. P. art. 13; La. Rev. Stat. Ann. § 1:55.

[24] Although petitioner subsequently filed other applications seeking post-conviction relief, applications filed after the expiration of the federal statute of limitations have no bearing on § 2244(d)(2) tolling determinations. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4 (E.D. La. July 24, 2000), aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). Simply put: once the federal limitations period has expired, "[t]here [i]s nothing to toll." Butler v. Cain, 533 F.3d 314, 318 (5th Cir. 2008).

5

statute of limitations can be equitably tolled "in *rare and exceptional* circumstances" (emphasis added)). Indeed, the Supreme Court held that "a petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights *diligently*, and (2) some *extraordinary* circumstance stood in his way and *prevented* timely filing." Holland, 560 U.S. at 649 (emphasis added; internal quotation marks omitted). Regarding those two components, the United States Supreme Court has explained:

> [W]e have expressly characterized equitable tolling's two components as "elements," not merely factors of indeterminate or commensurable weight. Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements"). And we have treated the two requirements as distinct elements in practice, too, rejecting requests for equitable tolling where a litigant failed to satisfy one without addressing whether he satisfied the other. See, e.g., Lawrence v. Florida, 549 U.S. 327, 336-337, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007) (rejecting equitable tolling without addressing diligence because habeas petitioner fell "far short of showing 'extraordinary circumstances'"); Pace, *supra*, at 418, 125 S.Ct. 1807 (holding, without resolving litigant's argument that he had "satisfied the extraordinary circumstance test," that, "[e]ven if we were to accept [his argument], he would not be entitled to relief because he has not established the requisite diligence").

Menominee Indian Tribe of Wisconsin v. United States, 136 S. Ct. 750, 756 (2016).[25] A petitioner bears the burden of proof to establish entitlement to equitable tolling. Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).

In the instant case, petitioner seems to suggest that equitable tolling is warranted here because the Louisiana First Circuit Court of Appeal used the wrong address when sending the notice of its judgment on direct appeal to petitioner's appellate counsel, Michael Thiel.[26]

---

[25] Menominee Indian Tribe was not a habeas corpus case. However, its equitable tolling discussion is expressly based on the Supreme Court's interpretation of Holland; therefore, the reasoning therein is applicable to habeas cases. See, e.g., Brian R. Means, Federal Habeas Manual § 9A:83 (2019).

[26] See Rec. Doc. 4, pp. 12-13.

6

However, even if this Court assumes for the purposes of this decision that the Court of Appeal did in fact send notice of its judgment, which was issued on June 8, 2012, to the wrong address, petitioner alleges that he and Thiel became aware of the error and the judgment in mid-December of 2012.[27] At that point, only approximately five months of petitioner's federal limitations period, which commenced on July 9, 2012, had expired. Therefore, even after he became aware of the ruling, he had approximately seven months – *more than half of the entire limitations period* – remaining. Accordingly, the delay in no way "prevented" petitioner from complying with federal statute of limitations. On the contrary, he still had ample time in which to seek both state post-conviction relief and federal habeas corpus relief in a timely manner if only he had acted with diligence and alacrity. He did not. That fact is fatal, because "equitable tolling will be denied if the petitioner failed to diligently pursue relief after ultimately learning of the necessary court disposition." Brian R. Means, Federal Habeas Manual § 9A:112 (2019); accord Gutierrez v. Cockrell, No. 01-41148, 2002 WL 1860554 (5th Cir. June 19, 2002) ("Equitable tolling is for parties who proceed with diligence and alacrity. Gutierrez's self-imposed delays in filing a state habeas application and a 28 U.S.C. § 2254 petition occurred after he had learned of the delay caused by [counsel's failure to notify him of a state court ruling in a timely manner]. Gutierrez did not act with diligence and alacrity." (citations and quotation marks omitted)).

Petitioner next alleges that equitable tolling is warranted because, after the Louisiana First Circuit Court of Appeal refused to consider the first non-compliant collateral-review writ application filed by Thiel,[28] Thiel failed to then file a proper application correcting his errors.[29]

---

[27] See id.
[28] State v. Hines, No. 2013 KW 1415, 2013 WL 12173056, 2013 La. App. LEXIS 3007 (La. App. 1st Cir. Nov. 4, 2013); Rec. Doc. 4-2, p. 8.
[29] See Rec. Doc. 4, p. 13.

7

However, that is simply untrue.  Thiel, as instructed by the Court of Appeal, did in fact file a new compliant writ application[30] which was then considered and denied by the Court of Appeal.[31]

Petitioner thereafter retained new post-conviction counsel, Peter John.  On June 9, 2014, John filed a "Motion to Re-Urge Application for Post-Conviction Relief" with the state district court.[32]  On March 16, 2015, the district court then again denied relief,[33] and petitioner argues that he is entitled to equitable tolling because he did not receive timely notice of that decision.[34]  However, as previously explained, petitioner's deadline for seeking federal relief was **April 22, 2014**.  Therefore, any error regarding receipt of notice of the decision of March 16, 2015, occurred *after* the federal limitations period had *already expired*.  Equitable tolling is unavailable for an alleged "exceptional circumstance" that did not arise until after the federal limitations period expired.  See, e.g., Lookingbill v. Johnson, 242 F. Supp. 2d 424, 435 (S.D. Tex. 2000).

Lastly, petitioner argues that equitable tolling is warranted because John failed to provide him with copies of his transcripts so he could continue to seek post-conviction relief on his own.[35]  However, because petitioner's federal limitations had already expired by the time John withdrew as petitioner's counsel, any delays petitioner experienced thereafter would, again, not warrant equitable tolling.

---

[30] See Rec. Doc. 4-2, pp. 9-19.
[31] State v. Hines, No. 2013 KW 2078, 2014 La. App. LEXIS 700 (La. App. 1st Cir. Mar. 14, 2014); Rec. Doc. 4-2, p. 21.
[32] State Rec., Vol. 7 of 8.
[33] State Rec., Vol. 7 of 8, Order and Reasons for Judgment dated March 16, 2015.
[34] See Rec. Doc. 4, p. 13; Rec. Doc. 4-1, pp. 1-2.
[35] See Rec. Doc. 4, p. 13.

Because the foregoing circumstances do not warrant equitable tolling, and because petitioner has failed to identify another basis for such tolling, he has failed to meet his burden of proof to establish entitlement to equitable tolling.

Lastly, the Court notes that a petitioner can overcome the AEDPA's statute of limitations by making a convincing claim of "actual innocence" under McQuiggin v. Perkins, 569 U.S. 383 (2013). In Perkins, the United States Supreme Court held:

> This case concerns the "actual innocence" gateway to federal habeas review applied in Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and further explained in House v. Bell, 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). In those cases, a convincing showing of actual innocence enabled habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims. Here, the question arises in the context of 28 U.S.C. § 2244(d)(1), the statute of limitations on federal habeas petitions prescribed in the Antiterrorism and Effective Death Penalty Act of 1996. Specifically, ... can the time bar be overcome by a convincing showing that [the petitioner] committed no crime?
> We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup and House, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S., at 329, 115 S.Ct. 851; see House, 547 U.S., at 538, 126 S.Ct. 2064 (emphasizing that the Schlup standard is "demanding" and seldom met).

Perkins, 569 U.S. at 386.

Here, petitioner has not invoked Perkins. However, in the event he does so in any objections to this Report and Recommendation, the undersigned finds that he has not made the showing required under Perkins for the following reasons.

Petitioner was convicted of armed robbery. Regarding that crime, Louisiana jurisprudence holds:

9

> Armed robbery is defined as (1) a taking, (2) of anything of value, (3) from the person of or in the immediate control of another, (4) by use of force or intimidation, (5) while armed with a dangerous weapon. La. R.S. 14:64; State v. Hernandez-Zuniga, 11-378 (La.App. 5 Cir. 12/13/11); 81 So.3d 129, 132, writ denied, 12-28 (La. 4/20/12); 85 So.3d 1268. In addition to proving the statutory elements of the charged offense at trial, the State is required to prove a defendant's identity as the perpetrator. State v. Draughn, 05-1825 (La. 1/17/07); 950 So.2d 583, 593, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007).
>
> La. R.S. 14:24 provides that all persons concerned in the commission of a crime, whether present or absent, and whether he directly commits the offense, aids and abets in its commission, or directly or indirectly counsels or procures another to commit the crime, are principals. A principal is liable just as the person who directly commits the crime. State v. Falkins, 04-250 (La.App. 5 Cir. 7/27/04); 880 So.2d 903, 913, writ denied, 04-2220 (La. 1/14/05); 889 So.2d 266, and writ denied sub nom. State ex rel. Simms v. State, 04–2171 (La. 5/20/05); 902 So.2d 1045.
>
> ….
>
> The state may prove a defendant guilty by showing that he served as a principal to the crime by aiding another. Under this theory, the defendant need not actually take anything to be found guilty of the crime of armed robbery. State v. Womack, 47,639 (La.App. 2 Cir. 1/16/13); 109 So.3d 418, 424, writ denied, 13-304 (La. 9/20/13); 123 So.3d 163. Additionally, a defendant convicted as a principal to armed robbery need not have personally held a weapon to be guilty. Id.

State v. Franklin, 142 So. 3d 295, 301 (La. App. 5th Cir. 2014), writ denied, 159 So. 3d 462 (La. 2015).

In assessing a petitioner's claim of actual innocence, a court normally first examines the evidence presented at trial and on which the conviction was based. See, e.g., Johnson v. Cain, Civ. Action No. 14-543, 2015 WL 4528889, at *3 (E.D. La. July 27, 2015), aff'd, 667 F. App'x 474 (5th Cir. 2016); Lyles v. Tanner, Civ. Action No. 13-655, 2014 WL 4674673, at *6 (E.D. La. Sept. 17, 2014). In the instant case, the Louisiana First Circuit Court of Appeal summarized that evidence as follows:

> On or about January 2, 2009, at approximately 6:30 p.m., armed assailants later identified as Antonio Hines (the defendant's son) and August Jones rang the doorbell at the residence of Reverend Lenach Dokes, Sr., and his wife, Betty Dokes, located at 12354 Steptoe Road in Tangipahoa Parish.[FN 1] When Reverend Dokes opened the door, the assailants initially requested assistance under the guise of

having car trouble, and then gained entry at gunpoint. According to Reverend Dokes, Antonio Hines referred to him by his last name as he told him to shut up when the Reverend pleaded with Jones not to comply with Antonio Hines's instruction to shoot Mrs. Dokes. The assailants took cash, several firearms, and jewelry before fleeing the home. The Tangipahoa Parish Sheriff's Office (TPSO) was dispatched to the scene when the victims called 911.

> [FN1]  The Dokes did not know the assailants; however, Betty Dokes' niece was married to the defendant, who had been in the Dokes' residence on several occasions before the robbery took place.  The record interchangeably indicates that the victims' home is located in Roseland or Arcola, Louisiana.

….

… At [a pretrial suppression] hearing, testimony was adduced indicating the Dokes family named the defendant as a possible suspect for the armed robberies. At the time, the defendant was a state police confidential informant. After the defendant assisted with controlled buys of firearms, Antonio Hines, August Jones, and Quatrick Holmes were arrested. Statements by Antonio Hines and August Jones were recorded by Detective Arthur Gabriel of TPSO, who took possession of the recordings and had them transcribed, while state police recorded Quatrick Holmes's statement. The statements implicated the defendant in the Dokes robberies.

Thereafter, Captain [Kevin] Duvall [of the Louisiana State Police Criminal Investigation Unit], Senior Trooper Brian Blount of the Louisiana State Police Criminal Investigation Unit, and Detective Gabriel met the defendant at the old TPSO substation, where he believed he would be collecting payment for his assistance. Upon the defendant's arrival, Trooper Blount immediately handcuffed him and read him his Miranda rights and told him he was being arrested for orchestrating the home invasion/armed robberies. Trooper Blount testified that the defendant initially denied any involvement until the officers informed him of the information they had already received. According to the officers, the defendant was not coerced, threatened, or beaten, no promises were made, and he never invoked his right to remain silent or his right to an attorney and did not appear to be intoxicated. Regarding the defendant's ultimate admission, Trooper Blount testified:

> He—I believe he informed—he told—pointed out exactly where the house was to Quatrick Holmes—I'm sorry—to Antonio Holmes [sic]. Explained about how the female in the house, where she kept her money, inside her bra. Where the safe was. And I think it was a relative—distant relative—of his, or something, in some way.

After being transported to the new TPSO substation, the defendant was again advised of his Miranda rights, executed a waiver of rights form, and confessed again with more details during a recorded interview. According to Detective Gabriel, the defendant stated during the recorded interview that he knew the Dokes

11

family because his wife was a relative of the family. He further stated that he told his son, Antonio Hines, and August "Petey" Jones that the family would be an easy "lick" because they were older people and they kept cash and a safe in the house. The defendant also noted that the Dokes family would not recognize his son and Jones, who were not from the area. Captain Duvall testified that he also heard the defendant admit his involvement in the robberies.

According to Detective Gabriel, the defendant made additional inculpatory statements while being transported to the Tangipahoa Parish jail in Amite. Although Detective Gabriel could not recall verbatim the statements made by the defendant during transport, he testified that they were consistent with the defendant's recorded statements and that the defendant expressed regret at involving his son in the robberies.

Detectives Gabriel and Duvall testified that they never had possession of the recording of the defendant's statement, noting that they used Trooper Blount's recorder, that state police took possession of the tape, and that they did not destroy the evidence or instruct anyone to do so. Captain Duvall, during cross-examination, further testified that the departmental policy regarding the handling of a physical microcassette after a statement was recorded was to label the evidence with the date, time, and the defendant's name and signature, and to remove the tabs to prevent rerecording. The evidence would sometimes be reviewed by the detective in preparing his report, and then would be sealed in an evidence envelope, placed in the case report, and routed up the chain.

Trooper Blount testified that he did not know what happened to the recording. Further, Trooper Blount testified that it was common for electronic devices such as the one he used to record the defendant's statement to malfunction and fail to record. He could not recall whether the device actually recorded the defendant's statement or whether he downloaded the statement to his office computer, and responded negatively when asked if he erased or purposefully lost the recording. Trooper Blount could not recall the confession verbatim, but when asked to give his best recollection of the contents of the recorded statement, he testified that the defendant explained how he drove by the residence, informed the other perpetrators of the location of the money and other items, and explained how he orchestrated the incident.

At the end of the [suppression] hearing, the trial court deferred ruling. On May 10, 2011, the trial court denied the defendant's motion to suppress and this Court ultimately denied the defendant's writ application seeking review of that ruling.

During the trial, the officers were permitted to testify to the statements made to them by the defendant. The pertinent trial testimony was consistent with the testimony presented at the motion to suppress hearing …. Specifically, Trooper Blount testified that the defendant showed the other subjects the location of the home, told them that Mrs. Dokes kept money in her bra, and told them that there was a safe in the home that had money in it. Similarly, Detective Gabriel testified that the defendant stated that he planned the robbery, showed the other subjects the

12

house and informed them that they would not have to cover their faces because they would not be recognized. Detective Gabriel further testified the defendant stated that the Dokes family had a safe and money in their home, and that it would be an "easy lick to hit."[36]

The United States Supreme Court has explained that, in order to assert a credible claim of actual innocence, a petitioner is required "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup v. Delo, 513 U.S. 298, 324 (1995).

In the instant case, petitioner presents no new evidence whatsoever. Therefore, he cannot meet "the threshold requirement" for Perkins to apply, i.e. a showing that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Perkins, 569 U.S. at 386 (quoting Schlup, 513 U.S. at 329). Accordingly, Perkins does not aid him.

Because petitioner is not entitled to further statutory tolling, and because he has not established that equitable tolling is warranted or made a convincing claim of actual innocence, his federal application for habeas corpus relief had to be filed no later than **April 22, 2014**, in order to be timely. His application was not filed until **October 22, 2018**, and, therefore, it is untimely.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** federal application seeking federal habeas corpus relief filed by Bruce Hines be **DISMISSED WITH PREJUDICE**.

---

[36] State v. Hines, No. 2011 KA 2082, 2012 WL 2061513, at *1-5, 2012 La. App. Unpub. LEXIS 447, at *2-14 (La. App. 1st Cir. June 8, 2012) (citations and footnote omitted); Rec. Doc. 4-1, pp. 38-49.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[37]

New Orleans, Louisiana, this __23rd__ day of August, 2019.

 

_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[37] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.